IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE LEA HULL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-15-954-R ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff, Michelle Lea Hull, seeks judicial review of the Social Security Administration's denial of disability insurance benefits. This matter has been referred by United States District Judge David L. Russell for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## I. Procedural Background

On May 5, 2012, Plaintiff protectively filed an application for disability insurance benefits. AR 121-126, 151. The Social Security Administration (SSA) denied the application initially and on reconsideration. AR 39, 50. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated March 31, 2014. AR 9-18. The Appeals Council denied Plaintiff's request for review. AR 1-4. Thus, the decision of the ALJ became the final decision of the Commissioner. It is this decision which is the subject of judicial review.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 25, 2010. AR 11.[1]

At step two, the ALJ determined that Plaintiff suffers from bipolar disorder and that this is a severe impairment. AR 11. The ALJ further determined that Plaintiff's bilateral carpal tunnel syndrome, status post surgery, is not severe. *Id*. At step three, the ALJ found that Plaintiff's impairment does not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 11-13.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she could perform light work with the following limitations: "The claimant can handle and finger frequently. She must work in relative isolation with limited contact with peers, supervisors, and the general public. She can follow short and simple instructions." AR 13.[2]

At step four, the ALJ found that Plaintiff could not perform her past relevant work including kindergarten teacher and elementary school teacher. AR 16. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could perform other light, unskilled work including shipping clerk, laundry worker and janitor, and that these jobs exist in significant numbers in the regional and national economies. AR 17. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. *Id*.

---

[1] The ALJ found Plaintiff met the insured statutes requirements of the Act through September 30, 2014. *Id*.

[2] *See* 20 C.F.R. § 404.1567(b) (setting forth requirements for light work).

### III. Issues Presented for Judicial Review

Plaintiff raises three issues for judicial review. First, Plaintiff claims that the ALJ committed reversible legal error by failing to properly evaluate the medical opinions of her treating psychiatrist, Dr. Darbe. Second, Plaintiff claims the ALJ erred as a matter of law by failing to discuss uncontroverted evidence and/or significantly probative evidence that conflicted with his findings. Specifically, Plaintiff challenges the ALJ's treatment of Dr. Darbe's opinions, medical evidence related to her carpal tunnel syndrome and the ALJ's failure to address Plaintiff's migraines and/or tension headaches. Third, Plaintiff claims the ALJ's credibility analysis is both contrary to the law and not supported by substantial evidence.

Plaintiff's first two claims of error require a remand. Due to the remand, the Court does not reach the merits of the remaining claim as that issue "may be affected by the ALJ's treatment of the case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.

2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.   Analysis**

   **A.   The ALJ's Rejection of Dr. Darbe's Treating Psychiatrist Opinions is Legally Flawed and not Supported by Substantial Evidence Requiring a Remand**

       **1.   Dr. Darbe's Treating Psychiatrist Opinions**

Plaintiff saw Dr. Darbe beginning in May 2009 and continuing through August 2013. In August 2012, Dr. Darbe completed two assessments which contain the treating psychiatrist opinions at issue. One of the assessments is on a form entitled Medical Source Statement (Mental). AR 422-424. This form utilizes a five-point scale to rate functional limitations. After completing the check-box section of the form, Dr. Darbe made the following mental RFC assessment: "Ms. Hull suffers from a bipolar disorder. Her disorder is characterized by chaotic lifestyles and instability. She has not been able to maintain the job or subsequently hold the job." AR 424. As further support for his assessment, Dr. Darbe noted that Plaintiff "comes from a family with a long history of mental illness" and that Plaintiff's sister committed suicide four months prior. *Id*. He further noted that Plaintiff suffers from severe anxiety in addition to her bipolar disorder. *Id*. Finally. Dr. Darbe noted that Plaintiff had been a patient of his for four years and that "[d]uring that time she has made some minor improvements with respect to sleep but she continues to be very depressed, anxious and has not been able to function outside the home." *Id*.

Dr. Darbe's second assessment is on a form entitled "Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue and Hysterical Paralysis." AR 425-

4

428. Dr. Darbe opined that Plaintiff has marked, severe or extreme limitations in most areas of mental functioning.[3]

## 2. Standards Governing Treating Physician Opinions

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. *Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011). The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Id*. at 1330. First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id*.

When a treating physician opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the

---

[3] Dr. Darbe's opinion included findings that Plaintiff was extremely limited in her ability to maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, complete a normal workday without interruptions from psychologically-based or pain-related symptoms and perform at a consistent pace. AR 426. Additionally, he opined that Plaintiff was extremely limited in her ability to follow work rules, deal with work stresses and function independently. AR 425.

kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id*. at 1331 (citation omitted).

The treating physician rule is founded on the treating physician's unique perspective to the medical evidence due to both the duration and frequency of the treatment relationship. *Doyal*, 331 F.3d at 762. The rule "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id*. (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (addressing weight given to treating source due to his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").[4]

### 3. The ALJ's Analysis of Dr. Darbe's Opinions

The ALJ gave "little weight" to the opinion of Dr. Darbe, *see* AR 15, and therefore effectively rejected that opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating that an ALJ's decision to assign little weight to an opinion "operate[s] as the equivalent of a rejection of the opinion"). As support, the ALJ found as follows: "Few if any positive

---

[4] The Commissioner attempts to recast Plaintiff's first claim of error and instead disingenuously addresses whether the ALJ "reasonably considered medical source opinions." *See* Def.'s Br. [Doc. No. 24] at p. 4. The Commissioner then merely recites the "relevant negative findings" set forth in the ALJ's decision and discussed infra. *Id*. at pp. 5-7. Additionally, the Commissioner impermissibly provides post-hoc rationales in support of the ALJ's decision. *Id*. at pp. 7-10.

findings were noted on the occasions on which the physician examined the claimant both before and after this statement." AR 15.[5] The ALJ then identified a litany of what he deemed to be the relevant "negative findings" based on check-box assessments completed by Dr. Darbe on September 18, 2012; November 13 and 20, 2012; December 28 and 29, 2012; January 15 and 30, 2013; February 21, 2013; April 18, 2013; June 13, 2013; August 8 and 13, 2013; and October 4, 2013. AR 15-16 (citing Exhibits 7F, 8F, 9F and 11F). The ALJ repeatedly cited Dr. Darbe's findings that Plaintiff had a "neat and clean appearance" and that "delusions or hallucinations" were absent. AR 15-16. The ALJ also repeatedly cited Dr. Darbe's findings that Plaintiff had a "cooperative attitude." *Id*.

A closer examination of Dr. Darbe's treatment notes, however, demonstrates that the ALJ engaged in impermissible picking and choosing of Dr. Darbe's findings. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted). In the section of the ALJ's decision rejecting Dr. Darbe's opinion, the ALJ only addressed Dr. Darbe's treatment notes for the time period September 2012 through October 2013. AR 15-16. Yet, Dr. Darbe expressly based his opinions on his treatment of Plaintiff during a period of over four years. AR 424.

Second, the ALJ failed to address "positive" findings directly related to Plaintiff's mental functional limitations. For example, the ALJ found that on September 18, 2012, "relevant negative findings" included "neat and clean physical appearance, normal speech, intact thought processes, intact memory, the absence of delusions or hallucinations, and cooperative attitude." AR 15. But the ALJ omits Plaintiff's report on that day that she "sleeps until noon" and is "very

---

[5] The ALJ's decision makes no reference to the pertinent regulations governing a treating physician analysis or citation to the relevant factors that govern that analysis.

depressed." AR 458. Nor did the ALJ address Dr. Darbe's findings that Plaintiff's mood was anxious, her affect labile and her judgment and insight fair. *Id*. Additionally, the ALJ did not address side-effects from Plaintiff's medication, specifically that "Klonopin made her manic." *Id*. Similarly, the ALJ failed to address that just one month prior, in August 2012, Plaintiff reported that she had suffered "a major meltdown last Sunday" or Dr. Darbe's findings that Plaintiff suffered from decreased energy, attention and concentration, her speech was slow, her mood dysphoric her affect constricted and her judgment and insight fair. AR 460.

The ALJ found that on November 13, 2012, "relevant negative findings" included "neat and clean physical appearance, normal speech, euthymic mood, appropriate affect, intact and oriented thought processes, intact memory, the absence of delusions or hallucinations, and cooperative attitude." AR 15. But the ALJ omitted reference to Dr. Darbe's findings that Plaintiff suffered decreased attention and concentration and her judgment and insight were fair. AR 456.

Again, the ALJ found that on December 28, 2012, "relevant negative findings" included "neat and clean physical appearance, normal speech, appropriate affect, intact thought processes, intact memory, intact memory [sic], the absence of delusions or hallucinations, and cooperative attitude." AR 15. But the ALJ omits Plaintiff's report on that day of a "nervous breakdown." AR 490. Nor did the ALJ address Dr. Darbe's findings that Plaintiff's mood was dysphoric and anxious, that she had decreased energy, attention and concentration, and that her judgment and insight were limited and/or fair. *Id*. Unlike Plaintiff's "neat and clean appearance," the additional findings by Dr. Darby are directly related to her mental functional limitations.

On February 21, 2013, the ALJ found "relevant negative findings" included "neat and clean physical appearance, normal speech, intact memory, the absence of delusions or

8

hallucinations, and cooperative attitude." AR 15-16. But the ALJ ignored Dr. Darbe's findings that Plaintiff's mood was dysphoric and anxious, and her insight and judgment fair. AR 488. The ALJ also ignored Dr. Darbe's additional diagnoses of depression and migraine headaches. *Id*.

The ALJ similarly disregarded pertinent findings made by Dr. Darbe in other areas of his decision. For example, in support of the ALJ's RFC determination, he again relied on "relevant negative findings." But those findings had little relationship to Plaintiff's mental functional limitations.

The ALJ found that on March 25, 2010, "relevant negative findings" included "neat and clean physical appearance, normal speech, appropriate affect, intact memory and thought processes, the absence of delusions or hallucinations, and cooperative attitude[.]" AR 14. But the ALJ omits Plaintiff's reports on that day of a "nervous breakdown" and that she could not stop crying or feeling anxious. AR 406. Nor did the ALJ address Dr. Darbe's finding that Plaintiff "needs an increase in anti-depressant." *Id*. Additionally, the ALJ failed to address Dr. Darby's findings that Plaintiff's mood was dysphoric, and anxious and her judgment and insight were limited. *Id*. Again, unlike Plaintiff's "neat and clean appearance" the additional findings by Dr. Darby are directly related to her mental functional limitations.

Similarly, the ALJ found on March 3, 2011, that "relevant negative findings" included "neat and clean appearance, normal speech, euthymic mood, appropriate affect, intact and oriented memory, the absence of delusions or hallucinations, and cooperative attitude." AR 14. But the treatment notes on that date additionally find that Plaintiff suffered from tension headaches, decreased attention and concentration and fair insight and judgment. AR 396.

9

Again, the latter findings are directly related to Plaintiff's mental functional limitations and yet, are wholly unaddressed by the ALJ.

The ALJ found that on April 30, 2012, "relevant negative findings" included "clean physical appearance, normal speech, appropriate affect, intact memory, the absence of delusions or hallucinations, and cooperative attitude." AR 15. But the ALJ ignored Dr. Darby's findings that Plaintiff's "anxiety is worse," that Plaintiff is "nervous when people talk to her," that "confrontation makes her nervous" or that Plaintiff had reported that her "sister committed suicide." AR 380, 381.

The specific instances cited above are intended to be illustrative, not exhaustive, of instances in which the ALJ impermissibly engaged in picking and choosing amongst the findings contained in Dr. Darbe's treatment notes. The ALJ's finding that "[f]ew if any positive findings were noted on the occasions on which the physician examined the claimant both before and after [the August 4, 2012 Medical Source Statement]," *see* AR 15, is not supported by substantial evidence. The ALJ failed to address significant probative evidence contained in Dr. Darbe's treatment records. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Indeed, the ALJ "ignored evidence from [Dr. Darbe] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability. This was error." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). In this regard, the Court notes that "a psychological opinion may rest either on observed signs and symptoms or on psychological tests . . . thus, [Dr. Darbe's] observations about [Plaintiff's] limitations do constitute specific medical findings." *Robinson*, 366 F.3d at 1083 (citations omitted).

For these reasons, the ALJ's determination not to give Dr. Darbe's opinions controlling weight is legally flawed and not supported by substantial evidence. The ALJ failed to address whether the opinions were well-supported. And to the extent the ALJ concluded Dr. Darbe's opinions were inconsistent with his treatment records, the ALJ failed to address significantly probative evidence demonstrating their consistency and his reasons for rejecting that evidence.

Additionally, the ALJ did not address the second, and analytically distinct, phase of the treating physician analysis. Among other deficiencies, the ALJ failed to address the length of Plaintiff's treatment relationship with Dr. Darbe, the frequency of her treatment and the consistency between Dr. Darbe's opinion and the record as a whole, his expertise as a psychiatrist and pertinent "other factors" such as the degree of medication Dr. Darbe consistently and continuously prescribed to Plaintiff. Under these circumstances, this court "cannot simply presume the ALJ applied the correct legal standards in considering [Dr. Darbe's] opinion." *Robinson*, 366 F.3d at 1083 (internal quotations and citation omitted).

Finally, as Plaintiff correctly contends, the ALJ's error is not harmless. Harmless error may be applied "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). That exceptional circumstance does not exist here. To the contrary, for the reasons set forth, any harmless-error determination would rest "on legal or evidentiary matters not considered by the ALJ" and, therefore, "risks the general rule against post hoc justification of administrative action[.]" *Id*. Moreover, if Dr. Darbe's opinions were accepted, "it is difficult to imagine how [Plaintiff] could reasonably have been found capable of performing any sustained full time work." *See* Plaintiff's

Opening Br. [Doc. No. 18] at ECF p. 15. Alternatively, the VE did not "consider the impact of a majority of the significant limitations expressed [in Dr. Darbe's opinions] would have on the jobs relied on to deny [Plaintiff] benefits at step five." *Id*. For all these reasons, a remand is required.

> B. **The ALJ Failed to Properly Evaluate the Evidence Regarding Plaintiff's Bilateral Carpal Tunnel Syndrome**

Plaintiff additionally claims the ALJ erred in his evaluation of the evidence regarding her bilateral carpal tunnel syndrome which she suffers in both hands. Plaintiff claims the ALJ should have found this impairment severe at step two and further, that the impairment warranted the inclusion of manipulative limitations in the ALJ's physical RFC determination.

The only discussion in the ALJ's decision regarding Plaintiff's bilateral carpal tunnel syndrome is at step two of the sequential evaluation process. The ALJ found the impairment was not severe and in support, set forth the following:

> [O]n November 18, 2013, the claimant sought medical treatment with right hand pain, with worsening weakness and pain since June 2013. The claimant was diagnosed with neuropathy, median nerve at the carpal tunnel, left and treated on December 5, 2013, with neuroplasty, median nerve at the carpal tunnel. On January 22, 2014, the claimant described daily activities including mopping, laundry, and cooking.

AR 11 (citations omitted).

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404/1520(c). Step two requires only a de minimis showing of an impairment. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Additionally, to proceed beyond step two, "a claimant need only establish, and an ALJ need only find, one severe impairment." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Here, the ALJ found Plaintiff's bipolar disorder to be a severe impairment at step two and proceeded with the sequential evaluation process. Thus, the ALJ's failure to find Plaintiff's hand impairments severe, standing alone, does not give rise to reversible error. *Id.* ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

But the analysis does not end there. An ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2) and (e). Here, the ALJ's opinion fails to demonstrate that the ALJ considered Plaintiff's hand impairments at any point in the decision subsequent to the findings made at step two. *Compare Smith v. Colvin*, 821 F.3d 1264, 1267 (10th Cir. 2016) (any error at step two resulting from ALJ's failure to find a left shoulder impairment severe was harmless where the ALJ "apparently found impairments in both shoulders when assessing the [RFC]"; for example, "the judge found a reduced range of motion in Ms. Smith's shoulder joints and limited her ability to lift and carry objects"); *Allman*, 813 F.3d at 1331 (finding harmless error where ALJ did not find the claimant's headaches to be severe impairments but proceeded to step four based on the existence of other severe impairments and ALJ's decision "reflect[ed] thoughtful consideration of [the claimant's] headaches at step four); *see also Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (step two error is harmless so long as the ALJ takes into account the combined limiting effects of "*all* medically determinable impairments, severe or not," at the remaining steps of the sequential evaluation process).

Medical records establish that on October 10, 2013 Plaintiff was seen by Dr. Hamman and complained of pain in her right hand. AR 503-504. Dr. Hamman's treatment notes reflect that Plaintiff's right hand pain "has been going on for about 1 month and has continued to

worsen over the last month." AR 503. Dr. Hamman advised Plaintiff that her pain was "likely carpal tunnel" and instructed her to wear a brace. AR 504.

One month later in November 2013, Plaintiff was seen for an orthopedic evaluation and surgical consult. AR 522. At that time, Plaintiff stated that she had been suffering from pain in both hands since June 2013, with left hand pain more pronounced than right hand pain. AR 522. Plaintiff reported that the pain in her hands was affecting her activities of daily living. *Id*. She further reported that she had weakness, had been dropping things and had severe stabbing and electrical pain. *Id*. The EMG Interpretation was "bilateral severe carpal tunnel syndrome" and the assessment included carpal tunnel syndrome and hand weakness. AR 526. The problem was identified as "a worsening problem/condition that has been recalcitrant to appropriate conservative treatment" and elective surgery was decided upon as the appropriate plan of action. *Id*.

On December 5, 2013, Plaintiff underwent carpal tunnel surgery on her left hand on. AR 517-20. In a post-operative visit on January 22, 2014, Plaintiff's surgeon, Dr. Emerson, addressed Plaintiff's subjective complaints as follows:

> Numbness and tingling. Also describes burning and freezing sensations along with swelling. She states that she has been performing housework including mopping, laundry and on [sic] the cooking. She states no one at home helps her. . . . She does describe preoperative neuropathy and that many of these symptoms were present before surgery and have only improved slightly.

AR 543. Dr. Emerson's objective findings noted the following: mild swelling, mild tenderness to palpation, decreased sensation, strength as 5/5, and improving range of motion. *Id*. His impression included a finding of "[c]ontinued neurogenic pain and complaints." *Id*. He continued pain medication and provided Plaintiff a brace to wear. *Id*. at 543-44.[6]

---

[6] No medical records related to the treatment of Plaintiff's hands exist beyond this date.

At the hearing before the ALJ, Plaintiff testified that she was not recovering well from the surgery on her left hand and was waiting to have carpal tunnel surgery on her right hand. AR 26.[7] She testified that she has a hard time handling and grasping with both hands. *Id*. She also testified that she cannot do any "lifting, reaching, picking up stuff." *Id*.[8]

While the ALJ found at least one severe impairment – bipolar disorder – and continued with the sequential evaluation process, he did not address Plaintiff's hand impairments, limitations related thereto, and her accompanying subjective complaints of pain.[9] The record demonstrates Plaintiff's hand impairments are medically determinable impairments. Thus, the ALJ was required to address these impairments in making the RFC determination even if they qualified as "non-severe." Without addressing this evidence, the ALJ's finding that Plaintiff can "handle and finger frequently," *see* AR 13, is not supported by substantial evidence.[10] Under

---

[7] The record includes documentation of similar right hand pain. *See, e.g.*, AR 503-504.

[8] The jobs identified by the VE and relied upon by the ALJ in support of his step-five determination require frequent handling, fingering and reaching. AR 17, 36-37.

[9] In discounting Plaintiff's subjective complaints of pain, the ALJ did not address Plaintiff's hearing testimony. Instead, relying on a Function Report-Adult, completed by Plaintiff in June 2012, the ALJ concluded that Plaintiff "had no limitations on . . . using the hands . . . ." AR 14. He similarly relied on a Function Report-Adult-Third-Party, completed by Plaintiff's husband to find that Plaintiff had no limitations with respect to using the hands. *Id*. Each form directs the person filling it out to "[c]heck any of the following items that your illnesses, injuries, or conditions affect[.]" AR 181, 198. One of the boxes to check is "Using Hands". *Id*. In completing the forms, it is apparent that Plaintiff and her husband focused exclusively on limitations related to her mental impairments. *Id*. Moreover, as discussed, the medical record demonstrates that Plaintiff first experienced symptoms related to her hand pain in June 2013, approximately one year *after* the forms were completed.

[10] At step two the ALJ referenced Dr. Emerson's notes reflecting that Plaintiff had described her daily activities to include "mopping, laundry and cooking." AR 11. But the ALJ did not make any independent finding based on this notation in Dr. Emerson's treatment notes other than concluding that the impairment was not severe at step two. Instead, the ALJ relied solely on the

15

these circumstances, any step-two error is not harmless. *Compare Kilinshi ex rel. Kilinski v. Astrue*, 430 F. App'x 732, 737 (10th Cir. 2011) (ALJ's error in evaluating the claimant's thumb pain was not harmless; "if the ALJ had recognized the objective medical evidence showing significant joint arthritis pain and the physician's notation of fairly significant tenderness and a prescription for a hand-based splint, he may have found credible [the claimant's] testimony that she could not use a keyboard for more than an hour a day"). A remand, therefore, is required.[11]

## VI. Conclusion

In sum, the ALJ's analysis of Dr. Darbe's treating psychiatrist opinion is legally flawed and not supported by substantial evidence. On remand, the ALJ is reminded that he must complete both analytically distinct phases of the treating physician analysis and support his analysis with specific citation to the record in a manner sufficient to allow meaningful review. Additionally, whether or not the ALJ concludes on remand that Plaintiff's left and right hand impairments qualify as severe, the ALJ must address the limitations associated with Plaintiff's left and right hand impairments, including her subjective complaints of pain, when assessing Plaintiff's RFC. As set forth above, because the credibility determination may be affected by the ALJ's treatment of the case on remand, the Court does not consider Plaintiff's claim challenging that determination.

---

function reports in discounting Plaintiff's subjective complaints. *See* AR 14. As set forth supra, those function reports were completed prior to the onset of Plaintiff's hand pain.

[11] The Court need not separately address whether the ALJ erred in failing to address Plaintiff's migraines and/or tension headaches. Those conditions are noted in the treatment records of Dr. Darbe. On remand, in addressing Dr. Darbe's treating psychiatrist opinions, the ALJ is reminded of his duty to address the functional limitations, if any, resulting from those impairments singularly or in combination with Plaintiff's other impairments. Of course, "[t]he mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015). Plaintiff has not identified any particular functional limitation associated with her headaches.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with the recommendation set forth herein.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by November 1, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 11th day of October, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE